## SCHEDULE A TO PROPOSED ORDER

## DEFINED TERMS AND RULES OF CONSTRUCTION

### Defined Terms

1. ***Aggregate Collateral.*** Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. ***Aggregate Debt.*** Collectively, the Prepetition Debt and the Postpetition Debt.

3. ***Aggregate Liens.*** Collectively, the Prepetition Liens, the Replacement Liens, and the Postpetition Liens.

4. ***Allowable 506(b) Amounts.*** All fees, costs, expenses, interest at the default rate set forth in Section 4(a) of the Loan Agreement and other charges due or coming due under the Prepetition Documents with respect to the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Code § 506(b), including the deferred commitment fee due under Section 10(d) of the Loan Agreement, all reasonable out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, and all other costs and expenses incurred by Agents under the Prepetition Documents with respect to the Prepetition Debt, including, without limitation, such fees, costs and charges incurred in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto; and (b) the representation of Agents in and in connection with these Cases.

5. ***Availability Block.*** The "Availability Block," as that term is defined in the Loan Agreement.

6. ***Blocked Account.*** That certain blocked account maintained by ~~Borrower~~ Debtor at LaSalle Bank National Association having account number 5800973751.

7. ***Budget.*** The consolidated budget attached to this Order as <u>Schedule B</u>, as amended, modified or supplemented from time to time, for additional amounts or additional periods, all as may be agreed to by Agents from time to time.

8. ***Carveout.*** For the purposes of enabling Debtor's and Guarantor's estates to pay allowed fees and disbursements of professionals as may be awarded from time to time pursuant to Code §§ 330 and 331, the aggregate amount set forth in Paragraph 3(d) of this Order; provided, however, that the Carveout may be used only subject to the terms and provisions of Paragraph 3(d) of this Order.

9. ***Cases.*** Collectively, these jointly administered chapter 11 cases or any superseding chapter 7 cases of the Debtor or Guarantor.

10. ***Cash Collateral.*** All "cash collateral," as that term is defined in Code § 363(a), in which Debtor and Agents have an interest, all deposits subject to setoff rights in favor of Agents, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable. To the extent any such cash collected or received is not clearly identifiable as attributable to Prepetition Collateral or Postpetition Collateral, such cash shall be deemed to be proceeds of Prepetition Collateral.

11. ***Code.*** The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

12. ***Committee.*** Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

13.   *Cure Period.* (a) With respect to the occurrence of an Event of Default under subparagraphs (b) through (h), (j), or (k) of the definition of such term, none; and (b) with respect to any other Event of Default, two Business Days following Agents' written notice to counsel for Debtor and Guarantor, via facsimile or overnight mail, of the occurrence of such Event of Default.

14.   *Event of Default.* Any one or more of the following: (a) Debtor commits any Event of Default under Section 15 of the Loan Agreement (other than by reason of Sections 15(g) of the Loan Agreement with respect to Debtor or Guarantor); (b) Debtor or Guarantor fails to perform any of their obligations in strict accordance with the terms of this Order; (c) Debtor ~~Guarantor~~ fails to comply with any of the Variance Covenants, the Sale Covenants, or the International Inventory Sale Covenants; (d) Debtor or Guarantor, without Agents' consent, seek the use of Cash Collateral; (e) Debtor or Guarantor, without Agents' consent, file a motion to incur debt secured by a lien with priority equal to or superior to the Postpetition Liens or which is given superpriority administrative expense status under Code § 364(c); (f) Debtor or Guarantor files a motion to conduct a Code § 363 sale of all or part of the Aggregate Collateral on terms unacceptable to the Agents; (g) any key management of Debtor or Guarantor is removed or lost; (h) Debtor or Guarantor files a chapter 11 plan that is not acceptable to Agents; (i) any representation or warranty made by Debtor or Guarantor in any certificate, report or financial statement delivered to Agents proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (j) the Cases are converted to cases under chapter 7 of the Code; or (k) a Trustee is appointed or elected in the Cases, or an examiner with the power to operate Debtor's or Guarantor's business is appointed in the Cases.

15. *Filing Date.* July 25, 2007.

16. *Final Hearing.* The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

17. *Final Order.* A final order authorizing the use of Cash Collateral and incurring of Postpetition Debt entered at or in connection with the Final Hearing.

18. *First Priority Liens.* Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to avoidance or subordination pursuant to any provisions of the Code, applicable nonbankruptcy law, or any agreement.

19. *Guaranty.* That certain Continuing Unconditional Guaranty executed by Guarantor in favor of Agents as of April 4, 2007.

20. *International Inventory.* All inventory held, as of the Filing Date, by the Division of the Debtor commonly referred to as Rockford International Group.

21. *International Inventory Sale Covenants.* Debtor shall be required to: (a) no later than August 17, 2007, obtain and provide Agents with an executed asset purchase agreement from an entity and on terms acceptable to Agents that (i) provides for the sale of the International Inventory no later than August 24, 2007 and (ii) provides for the indefeasible and final payment, no later than August 24, 2007, of all proceeds of such sale to Agents for application by Agents to the Aggregate Debt in accordance with Paragraph 5(d) of this Order; and (b) no later than August 24, 2007, indefeasibly and finally pay the proceeds of the sale of International Inventory to Agents for application to the Aggregate Debt in accordance with Paragraph 5(d) of this Order.

22. ***Loan Agreement.*** That certain Loan and Security Agreement dated as of April 4, 2007, by and among Agents and Debtor, as amended, modified and supplemented from time to time.

23. ***Obligations.*** The Obligations, as that term is defined in the Loan Agreement.

24. ***Overadvance.*** The "Overadvance" as set forth in the Budget for the relevant week.

25. ***PBGC.*** The Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation created by Title IV of the Employee Retirement Income Security Act of 1974.

26. ***PBGC Claims.*** Any and all claims (as that term is defined in the Code) of the PBGC or in any way arising out, arising in connection with, or related to the pension obligations of Debtor or Guarantor.

27. ***PBGC Liens.*** Any and all liens that secure the PBGC Claims.

28. ***Permitted Liens.*** (a) Liens in favor of third parties upon the Prepetition Collateral with priority over Agents' security interests in the Prepetition Collateral, which third-party liens are: (i) not subordinated by agreement with Agents prior to the Filing Date or otherwise subordinated under Code § 510 and (ii) non-avoidable, valid, properly perfected and enforceable as of the Filing Date; (b) the Carveout; and (c) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a). For the avoidance of doubt, any PBGC Liens are not Permitted Liens, and each of the Aggregate Liens is senior in priority to any PBGC Liens and all of the Aggregate Debt is senior in priority of payment to all of the PBGC Claims.

29. ***Positive Borrowing Availability.*** The greater of (a) the amount of positive borrowing availability under the collateral advance formulas set forth in Section 2(a) of the Loan Agreement, taking into account all Aggregate Debt, the Availability Block in existence as of the Filing Date and all Reserves (whether such Reserves existed on the Filing Date or are put in

place thereafter), plus (ii) the Overadvance: and (b) the amount determined, by Agents, from time to time, in their discretion; provided, however, that the Postpetition Collateral and Agents' applications of Cash Collateral to the Aggregate Debt pursuant to Paragraph 5(d) of this Order shall be included in the calculations of such borrowing availability.

30. **Postpetition Charges.** All fees (including, without limitation, the collateral monitoring fee contained herein), costs, expenses, interest at the default rate and other charges due or coming due in connection with the Postpetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including all reasonable out-of-pocket filing and recording fees, attorneys' fees and paralegals' fees and expenses, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, fees and expenses of any consultant hired by Agents whether before or after the Filing Date, and all other costs and expenses incurred by Agents in connection with the Postpetition Debt.

31. **Postpetition Collateral.** All of the real and personal property of Debtor and/or Guarantor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (excluding claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, and all other Collateral (as that term is defined in the Loan Agreement) and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

32. **Postpetition Debt.** (a) All indebtedness or Obligations of Debtor and/or Guarantor to Agents incurred on or after the Filing Date pursuant to this Order or otherwise, including any advances made by Agents to pay Allowable 506(b) Amounts, plus (b) the Postpetition Charges.

33. **Postpetition Liens.** First Priority Liens in the Aggregate Collateral, subject only to Permitted Liens.

34. **Prepetition Collateral.** All of the Collateral (as that term is defined in the Loan Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

35. **Prepetition Debt.** (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all fees, costs, interest, and expenses (including the yield maintenance fee set forth in Section 10(d) of the Loan Agreement), plus (b) all Allowable 506(b) Amounts.

36. **Prepetition Documents.** The Loan Agreement and the Loan Documents (as that term is defined in the Loan Agreement).

37. **Prepetition Liens.** Agents' asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Liens.

38. **Replacement Liens.** First Priority Liens in the Postpetition Collateral granted to Agents pursuant to this Order, subject only to the Postpetition Liens and the Permitted Liens.

39. **Reserves.** Collectively: (1) the $1,750,000 in reserves under the Loan Agreement on the Filing Date, plus (2) all reserves established by Agents, in their sole and absolute discretion, pursuant to the Loan Agreement or this Order, after the Filing Date; plus (3) a reserve for the Carveout.

40. **Sale Covenants.** Debtor shall be required to: (a) no later than August 21, 2007, obtain and provide Agents with a commitment letter from an entity and on terms acceptable to Agents that (i) provides for the sale of the Aggregate Collateral no later than October 17, 2007 and (ii) provides for the use of the proceeds of such sale to indefeasibly and finally pay the Aggregate

Debt in full no later than October 17, 2007; (b) no later than September 20, 2007, obtain and provide Agents with an executed asset purchase agreement from an entity and on terms acceptable to Agents that (i) provides for the sale of the Aggregate Collateral no later than October 17, 2007 and (ii) provides for the use of the proceeds of such sale to indefeasibly and finally pay the Aggregate Debt in full no later than October 17, 2007; (c) no later than October 5, 2007, obtain entry of an order, in form and substance acceptable to Agents, that authorizes Debtor to consummate the sale contemplated by such asset purchase agreement and provides for the payment of an amount of proceeds of the Aggregate Collateral to Agents to finally and indefeasibly pay the Aggregate Debt in full no later than October 17, 2007; and (d) no later than October 17, 2007, indefeasibly and finally pay the Aggregate Debt in full from the proceeds of the sale of the Aggregate Collateral..

41. *Termination Date.* At Agents' election, the earliest to occur of: (a) the date on which Agents provides, via facsimile or overnight mail, written notice to Debtor and Guarantor of the occurrence of an Event of Default (or, if any Cure Period is applicable with respect to such Event of Default, the expiration of such Cure Period); (b) if this Order is modified at the Final Hearing in a manner unacceptable to Agents, the date of the Final Hearing; and (c) October 29, 2007.

42. *Trustee.* Any trustee appointed or elected in the Case.

43. *Variance Covenants.* Debtor, on a consolidated basis, shall be required to: (a) as of Friday, August 3, 2007, or any Friday thereafter, generate "Consolidated Net Receipts" in an amount equal to at least 95% of the amount set forth in the Budget for the cumulative period commencing on the Filing Date and ending on each such testing date, (b) as of Friday, August 3, 2007, or any Friday thereafter, generate "Consolidated Net Revenues" in an amount equal to at least 95% of the amount set forth in the Budget for the cumulative period commencing on the

Filing Date and ending on each testing date, and (c) as of Friday, August 3, 2007 or any Friday thereafter, maintain aggregate "Consolidated Net Disbursements" no greater than 5% more than the aggregate amount projected by the Budget to be expended during the cumulative period commencing on the Filing Date and ending on each such testing date.