# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

|  |  |
|---|---|
| IN RE: | ) |
|  | ) |
|  | ) Chapter 11 |
| ROCKFORD PRODUCTS CORPORATION, *et al.*, | ) |
|  | ) |
|  | ) Case No. 07 B 71768 |
| Debtors. | ) Jointly Administered |
|  | ) |
|  | ) Hon. Manuel Barbosa |
|  | ) |

## NOTICE OF (I) SALE OF CERTAIN OF THE DEBTORS' ASSETS; (II) FINAL OBJECTION DEADLINE; AND (III) SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      Rockford Products Corporation ("Rockford Products" or "Seller"), and Rockford Products Global Services, Inc. ("Rockford Global"), chapter 11 debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), have entered into that certain Asset Purchase Agreement (the "APA"),[1] dated August 28, 2007, by and between Rockford Products and RB Distribution, Inc. ("Buyer") regarding the sale of certain specified assets (the "Acquired Assets") of Rockford Products.

2.      The following is a summary of the material terms of the APA, an executed copy of which is attached hereto at **Exhibit A**:[2]

      a.      <u>Acquired Assets</u>:  At the Closing, and upon the terms and conditions set forth in the APA and subject to the approval of the Bankruptcy Court pursuant to Sections 105 and 363 of the Bankruptcy Code, Seller shall sell, convey, assign, transfer and deliver to Buyer, with good and marketable title, and Buyer shall purchase, acquire and accept, all right, title and interest, free and clear of all Liens and Liabilities, in each and all of the Acquired Assets. "Acquired Assets" shall mean, solely with respect to the Consumer Division (as defined in the APA), the following[3]:

---

[1]      Capitalized terms utilized but not defined herein shall have the meaning ascribed to them in the APA.

[2]      The summary included herein is not intended to substitute or replace the terms of the APA, which should be reviewed in its entirety.  To the extent there are any inconsistencies between the language in the notice and the APA, the terms of the APA shall control.

[3]      For the avoidance of doubt, Seller shall retain and shall not transfer to Buyer and specifically excluded from the definition of Acquired Assets (the "<u>Excluded Assets</u>") are any assets of Seller that are not Acquired Assets. The Excluded Assets are more fully described in Section 2.1 of the APA.

    i.   all usable, saleable bulk inventory, work-in-process inventory, Seller-owned inventory in-transit as of the Closing Date (it being understood that inventory for which Seller has paid as of the Closing Date and is in-transit to Seller shall be included as an Acquired Asset); and finished goods inventory of the Consumer Division;

    ii.   all Seller work-in-process inventory, upon completion into usable, saleable inventory manufactured by Seller for its Consumer Division as listed on Schedule 2.1(b) of the APA ("Seller Manufactured Inventory") in an amount not to exceed $150,000;

    iii.   all intangible assets associated with and used solely in the Consumer Division (except for those intangible assets licensed by Seller to Buyer pursuant to the License Agreement, which assets and license are agreed to constitute $250,000 of the Purchase Price), including the names and trademarks set forth on Schedule 2.1(c) of the APA, service marks, brand names, slogans, logos, trade secrets, know-how, patents, copyrights, designs, technologies and all rights of Seller, if any, to enforce, with respect to the Business only, confidentiality agreements executed by potential buyers of the Business; and

    iv.   all rights and interests in and to the NAPA customer contractual relationship.

b.  <u>Liabilities</u>.  Buyer will not assume, pay, perform or discharge any debt, Liability or contract of Seller, of any kind or character whatsoever (whether written or oral, existing, contingent or inchoate), which shall remain the sole obligations of Seller, including, without limitation: all Liabilities of Seller arising prior to the Closing Date under contracts relating to the Business; taxes, including, without limitation, taxes resulting from or payable in connection with the Consumer Division's activities for all periods prior to Closing and in connection with the sale of the Acquired Assets; compensation to employees, contractors, agents or others; employee benefit plan amounts; amounts relating to regulatory matters and/or any other Liabilities (collectively, the "<u>Retained Liabilities</u>").

c.  <u>Assignment of Contracts.</u>  With respect to any contract related to the Business, and provided such contract has not been rejected by Seller pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from Buyer, Seller shall use commercially reasonable efforts to assume and assign to Buyer pursuant to section 365 of the Bankruptcy Code any contract(s) set forth in Buyer's notice(s); <u>provided</u> that any applicable cure cost shall be satisfied by Buyer.  The parties agree and acknowledge that (i) following the Closing, provided that Seller provides Buyer with reasonable advance notice of any motion(s) to reject any contract (and any motions to reject contracts will set forth specifically contracts and parties thereto to be rejected) relating

2

to the Business, Seller may immediately reject any of its contracts and (ii) the covenant set forth in Section 2.3 of the APA shall survive the Closing.

Notwithstanding the forgoing, Seller irrevocably waives its rights under Sections 105, 363 and 365 of the Bankruptcy Code (and any other right it may have under the Bankruptcy Code, the APA or applicable law) to reject or otherwise seek a termination of Seller's contractual relationship with NAPA, the TSA[4] or License Agreement[5] and agrees the same shall remain in full force and effect. In addition, notwithstanding the provisions of Section 363 of the Bankruptcy Code, Seller further agrees that in the event of any future sale of the tradenames/trademarks covered by the License Agreement to an entity other than Seller, Seller shall, if requested by an acquirer, use commercially reasonable best efforts to cause such acquirer of the tradenames/trademarks to assume Seller's obligations under the License Agreement (and Seller shall provide Buyer with prompt notice following such sale). It is understood and agreed that, pursuant to the Bankruptcy Court Approval, such acquirer shall have the option, upon sixty (60) days' prior written notice to Buyer, of terminating the License Agreement by paying Buyer $250,000, which amount constitutes consideration provided by Buyer for entry into the License Agreement.

d. <u>Closing</u>. The consummation of the transactions contemplated herein (the "Closing") shall take place on the first Business Day that is five (5) days after the satisfaction of all of the conditions set forth in Section 7.1 of the APA (or the waiver thereof by Buyer), or on such other date as the parties to the APA shall mutually agree. The Closing shall be held at the offices of LeBoeuf, Lamb, Greene & MacRae LLP, 180 North Stetson Avenue, Chicago, Illinois, at 10:00 a.m., local time, unless the parties to the APA otherwise agree. The actual date of the Closing is herein called the "Closing Date." For purposes of the APA, from and after the Closing, the Closing shall be deemed to have occurred at 12:01 A.M. on the Closing Date.

e. <u>Purchase Price</u>. In consideration of the Acquired Assets and license contained in the License Agreement, and subject to the terms and conditions of the APA, Buyer shall pay to Seller an aggregate purchase price (the "<u>Purchase Price</u>") equal to the total of:

　　i. the value of all bulk inventory, work-in-process inventory and finished goods inventory on hand, that is not Excess Inventory, valued as of the Closing Date based on the average cost as reported in the Consumer

---

[4]　　"TSA" means that certain Transition Support Agreement between Seller and Buyer, substantially in the form attached to the APA as <u>Exhibit C</u>.

[5]　　"License Agreement" means that certain Trademark License Agreement between Seller and Buyer with respect to the following trademarks: ROCKFORD (word mark), Registration No. 936,429, and R (design), Registration No. 814,283, substantially in the form attached to the APA as <u>Exhibit B</u>.

Division's perpetual inventory system plus an additional forty-five percent (45%) of such value, plus

   ii. the value of all Seller-owned in-transit inventory, for which Seller has paid for in full, that is not Excess Inventory, valued as of the Closing Date at actual purchase order cost, plus

   iii. the value of all Seller Manufactured Inventory, that is not Excess Inventory, valued as of the Closing Date at the average cost of similar items in the Consumer Division's perpetual inventory system in an amount not to exceed $150,000, plus

   iv. $1,050,000 in immediately available funds.

f.   <u>Representations and Warranties</u>. The Seller provides customary representations and warranties related to the Acquired Assets and the Business, including representations related to organization of the Seller; Seller's power and authority to execute the APA; violation of rights under existing agreements, laws or order; third party approvals; title to assets; quality of the Inventories; contracts; customers; intellectual property; and brokers and finders fees. The Buyer provides customary representations and warranties, including representations related to organization of the Buyer; Buyer's power and authority to execute the APA; violation of rights under existing agreements, laws or order; and brokers and finders fees.

g.   <u>Covenants</u>. The Sellers and the Buyer agree to customary covenants, including covenants related to conduct of the business pending the Closing Date; approval from the Bankruptcy Court; access to offices, properties, officers, employees, accountants, auditors, counsel and other representatives, books and records of Seller; publicity; use of best efforts; further assurance; and notice.

h.   <u>Conditions Precedent</u>. The obligation of Buyer to consummate the transactions contemplated by the APA is subject to the satisfaction (or waiver by Buyer in Buyer's sole discretion) at or prior to the Closing Date of customary conditions, including conditions related to accuracy of representations and warranties; performance of Seller's obligations; receipt of officer's certificates; bankruptcy court approval; lack of injunction against the APA; assignment of Contracts; closing deliveries; lack of indication NAPA (Consumer Divisions' single largest customer) has or intends to stop purchasing its threaded fasteners from Consumer Division, Seller or Buyer; lack of material adverse effect. The obligation of Seller to consummate the transactions contemplated by the APA is subject to the satisfaction (or waiver by Seller) at or prior to the Closing Date of customary conditions, including conditions related to: accuracy of representations and warranties; performance of Seller's obligations; receipt of officer's certificates; bankruptcy court approval; lack of injunction against the APA; and closing deliveries.

4

i.  <u>Termination of Agreement</u>.  The APA may be terminated and the transactions contemplated by the  APA abandoned at any time prior to the Closing:

    i.  by written agreement of Seller and Buyer;

    ii.  by either Buyer or Seller:  (i) if the Closing shall not have occurred on or before the date which is sixty (60) days from the entry of the Sale Procedures Order (or such later date as may be mutually agreed upon by Buyer and Seller); provided, however, that the terminating party is not in material and willful breach of any of its representations and warranties contained in the APA and has not failed in any material respect to perform any of its obligations under the APA; or (ii) if any court of competent jurisdiction in the United States or any other governmental body shall have issued an order permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by the  APA;

    iii.  by Buyer:

- if there shall have been a breach by Seller of any of its representations, warranties, covenants or agreements contained in the APA, which breach would result in the failure to satisfy one or more of the conditions set forth in Section 7.1 of the APA, and such breach shall be incapable of being cured or, if capable of being cured, shall not have been cured within thirty (30) days after written Notice thereof shall have been received by Seller; or

- if the Sale Procedures Order shall fail to be in full force and effect, shall have been reversed, modified or amended in any respect without the prior written consent of Buyer; or

- if the Sale Procedures Order shall have been stayed for a period in excess of sixty (60) days from the entry thereof, without the prior written consent of Buyer; or

    iv.  by Seller, if there shall have been a breach by Buyer of any of its representations, warranties, covenants or agreements contained in the APA, which breach would result in the failure to satisfy one or more of the conditions set forth in Section 7.2 of the APA, and such breach shall be incapable of being cured or, if capable of being cured, shall not have been cured within thirty (30) days after written Notice thereof shall have been received by Buyer.

j.  <u>Automatic Termination</u>.  The APA shall automatically terminate, without any action on the part of Buyer or Seller, if Buyer is not selected as the Highest Bidder (as defined in the Sale Procedures Order), effective sixty (60) days after entry of the Sale Procedures Order.

k. <u>Consequences of Termination</u>. In the event of any termination of the APA by either or both of Buyer and Seller pursuant to Section 8.1 of the APA (provided that written Notice thereof shall forthwith be given by the terminating party to the other party to the APA, specifying the provision of the APA pursuant to which such termination is made) or Section 8.2 of the APA, the APA shall thereupon terminate and become void and of no further force and effect, and the transactions contemplated by the APA shall be abandoned without further action of the parties to the APA; <u>provided</u>, <u>however</u>, that such termination shall not relieve any party to the APA of any Liability for breach of the APA prior to termination; <u>provided further</u>, that in connection with any such termination each party shall be and shall remain liable for any payments owed or that become owed pursuant to, or that arise as a result of any such termination, including those detailed in Section 3.4 of the APA. The Escrow Amount shall be disbursed in accordance with the provisions of Section 3.4 of the APA.

In addition to any other rights that Buyer may have in the event of a termination of the APA, the Breakup Fee shall be paid by Seller to Buyer if there is a termination of the APA: (a) pursuant to Section 8.2 of the APA, in which event Seller shall pay the Breakup Fee to Buyer in immediately available funds, payable solely out of the proceeds received by Seller due to the sale of all or substantially all the Acquired Assets to a Person other than Buyer, immediately upon the date of consummation of such sale, or (b) pursuant to Section 8.1(a) of the APA, or by Buyer pursuant to Section 8.1(b) (provided, in the case of Section 8.1(b)(ii), such order shall not have been issued due to the acts or omissions of Buyer) or Section 8.1(c), in which event the Breakup Fee shall be paid within two (2) Business Days after such termination. If Seller terminates the APA in accordance with Section 8.1(b) of the APA (provided, in the case of Section 8.1(b)(ii), such order shall not have been issued due to the acts or omissions of Seller) or Section 8.1(d), or in the event either Seller or Buyer has the right to terminate the APA pursuant to Section 8.1(b)(i), Buyer shall not receive the Breakup Fee.

l. <u>Expenses.</u>  Except as set forth in the APA (including as set forth in Section 6.2(a) of the APA), and whether or not the transactions contemplated by the APA are consummated, each party to the APA shall bear all costs and expenses incurred or to be incurred by such party in connection with the APA and the consummation of the transactions contemplated by the APA.

m. <u>Assignment</u>.  Neither the APA nor any of the rights or obligations under the APA may be assigned by Seller without the prior written consent of Buyer. Subject to the foregoing, the APA shall be binding upon and inure to the benefit of the parties to the APA and their respective successors and assigns.

3.     Pursuant to a motion filed with the Bankruptcy Court on August 9, 2007, (the "Sale Motion"), the Debtors requested, among other things, (a) entry of an order (the "Sale Procedures Order") establishing procedures for the sale of the Acquired Assets to the highest and

best bidder; and (b) entry of an order (the "Final Sale Order") authorizing the sale of the Acquired Assets free and clear of all liens, claims, encumbrances and other interests.  You may obtain a copy of the Sale Motion by contacting counsel to the Debtors, LeBoeuf, Lamb, Greene & MacRae LLP, 180 North Stetson Avenue, Suite 3700, Chicago, Illinois 60601, Attention: Mohsin N. Khambati, Tel: 312-794-8052; Fax: (312) 794-8100, Email: mkhambati@llgm.com.

4.     On August 16, 2007, the Bankruptcy Court entered the Sale Procedures Order after notice and a hearing.  The Debtors now seek entry of the proposed form of Final Sale Order substantially in the form attached hereto at **Exhibit B.**

5.     Objections, if any, to the relief requested in the proposed Final Sale Order, including the sale of the Acquired Assets free and clear of all liens, claims, interests or encumbrances to the Buyer, must be in writing, and filed no later than **5:00 p.m. Central Time on Tuesday, September 4, 2007**, with the Clerk of the Court, United States Bankruptcy Court, U.S. Federal Court House, 211 South Court Street, Rockford, Illinois 61101 through the Bankruptcy Court's electronic filing system which may be accessed through the Internet at the Bankruptcy Court's website:  www.ilnb.uscourts.gov.

6.     Any objections to the relief requested in the proposed Final Sale Order shall also be served so as to be received no later than **5:00 p.m. Central Time on Tuesday, September 4, 2007** by each of (a) Counsel for the Debtors, LeBoeuf, Lamb, Greene & MacRae, LLP, 180 North Stetson Avenue, Suite 3700, Chicago, Illinois 60601, Attn: Mohsin N. Khambati, Esq.; (b) the Office of the United States Trustee, District Office, 780 Regent Street, Suite 304, Madison, WI 53715, Attn: Carol Ryczek Esq.; (c) Counsel to the prepetition and postpetition lender, Goldberg, Kohn, Bell, Black, Rosenbloom, and Moritz, Ltd., 55 E. Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Andrew Cardonick Esq.; (d) Counsel to the unsecured creditors committee, Greenberg Traurig, LLP, 77 W. Wacker Drive, Suite 2500, Chicago, IL 60601, Attn: Nancy A. Peterman, Esq.; and (e) Counsel to Amcore Investments in its capacity as Custodial Trustee under the Debtors' various employee benefit plans at Tishler & Wald, Ltd., 200 S. Wacker Dr., Suite 3000, Chicago, IL 60606, Attn: Kurt M. Carlson.

7.     Any party (other than the Agents and the Committee) that fails to file and serve a written objection in a timely manner and as provided above shall forever be barred from asserting, at the Sale Hearing (defined below) or thereafter, any objection to the Sale Motion, the consummation of the sale contemplated by the APA, the transfer of the Acquired Assets free and clear of all liens, claims, encumbrances and interests, and approval of the Final Sale Order.

8.     The Bankruptcy Court has set a hearing (the "Sale Hearing") on the relief requested in the Sale Motion and to consider approval of the proposed Final Sale Order on **Wednesday, September 5, 2007 at 11:00 a.m. (Central Time), in Courtroom 115 of the United States Bankruptcy Court, U.S. Federal Court House, 211 South Court Street, Rockford, Illinois 61101,** or as soon thereafter as counsel may be heard.  The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's calendar.

Dated:  August 28, 2007

ROCKFORD PRODUCTS CORPORATION, *et al.*

7

By: /s/ Thomas J. Augspurger
Lewis S. Rosenbloom (ARDC No. 2386321)
Mohsin N. Khambati (ARDC No. 6272526)
Thomas J. Augspurger (ARDC No. 6284657)
LEBOEUF, LAMB, GREENE & MACRAE LLP
Two Prudential Plaza
180 North Stetson, Suite 3700
Chicago, Illinois 60601
Tel: (312) 794-8000
Fax: (312) 794-8100

***Attorneys for the Debtors and Debtors in possession***

8