UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re: Rockford Products Corporation,<br><br>Debtor(s). | Bankruptcy No. 07-71768<br>Chapter 7<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the objection to the application of Katten Muchin Rosenman, LLP ("Katten") for allowance and payment of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(4) filed by chapter 7 trustee Daniel M. Donahue ("Trustee"), pursuant to 11 U.S.C. § 330 and Fed. R. Bankr. P. 2016, on July 8, 2009. For the reasons set forth herein, the Court sustains Trustee's objection in part and grants Katten's administrative expense claim in part. Katten's Chapter 11 administrative expense claim will be reduced from $62,152.04 to $55,936.84.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B).

## FACTS AND BACKGROUND

Rockford Products Corporation was the sponsoring employer of the Rockford Products Savings and Retirement Plan ("Savings Plan"), Correlated Pension Plan ("Pension Plan") and Employee Stock Ownership Plan ("ESOP"), (collectively, "Benefit Plans.") Permitted only under a grandfather clause, the Pension Plan was one of only a few in the country with a "floor-offset" formula under which the basic benefit was offset by actuarial equivalents of accounts in

the participants' Savings Plan and in the ESOP. A significant portion of the assets of the Savings Plan and ESOP consisted of Rockford Products Corporation's stock.

Pursuant to the Benefit Plans' terms, Rockford Products Corporation appointed a committee ("Committee") to oversee the Benefit Plans. In February 2007, Debtor missed a quarterly contribution to the Pension Plan and, as a result, the Pension Benefit Guaranty Corporation ("PBGC") filed a lien against all of Rockford Products Corporation's property, pursuant to section 412(n) of the Internal Revenue Code of 1986. As a result of PBGC's lien, the value of Rockford Products Corporation's common stock risked significant impact. Consequently, Rockford Products Corporation retained Katten pre-petition to assist the Committee with addressing the effects of PBGC's lien on the stock and the Committee's fiduciary duties under 29 U.S.C. § 1002(21).

On July 25, 2007, debtors Rockford Products Corporation and Rockford Products Global Services, Inc. ("Debtors") filed a voluntary bankruptcy petition under Chapter 11. From July 25, 2007 through September 24, 2007, post-petition, Debtors-in-Possession continued to retain Katten to continue with its services and advise Debtors as to their fiduciary duties relating to the Benefit Plans. In an order dated August 14, 2007, the Court granted authorization for Debtors-in-Possession to retain, employ and compensate certain professionals utilized in the ordinary course of Debtors' businesses. In November 2007, Debtors consummated Court-approved sales of substantially all of their assets.

On December 17, 2007, the matter was converted to a Chapter 7 proceeding. Daniel M. Donahue was appointed as Chapter 7 trustee ("Trustee"). The first meeting of creditors was held on March 13, 2008. In March 2008, Katten became aware that Debtors failed to follow the correct procedures to employ Katten. On June 3, 2008, Katten filed an application seeking an

administrative expense claim for $62,152.04 in post-petition, Chapter 11 services.

After Trustee's objection and a subsequent evidentiary hearing, in an order dated June 24, 2009, the Court granted Katten an allowed Chapter 11 administrative expense claim, pursuant to 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2), in an amount to be determined by further order of the Court.

On July 8, 2009, Trustee filed an objection to Katten's requested amount, $62,152.04, in their administrative expense claim. Trustee objected to the allowance of certain fees by Katten. Trustee first asserts that Katten block billed its invoices and billed in minimum 0.5 hour increments for attorney Brown. Trustee further states that Katten improperly billed for more than one attorney for intra-office lawyer conferences on ten (10) separate occasions. Trustee next argues that Katten's invoices lack sufficient detail to determine the extensive time spent on seven (7) phone calls. Trustee proffers that, on seven (7) occasions, Katten invoiced for officer and director issues, rather than estate issues. Trustee also asserts that Katten billed 13.1 hours for a "survey of current Seventh Circuit" rather than research related to any specific issue benefiting the estate.

On July 27, 2009, Katten filed a reply to Trustee's objection. Since Katten is not a professional employed under section 327, Katten asserts that section 507(b)(1)(A), not section 330, is the applicable standard to determine whether Katten's services were actual, necessary costs and expenses for preserving the estate. Katten further argues that it was employed and complied with the OCP order that required Katten to submit "reasonably detailed invoices indicating the nature of the services rendered and calculated in accordance with such Ordinary Course Professional's standard billing practices." In addition, Katten asserts that it is proper for attorneys within the same firm to consult with each other regarding a complex case. Katten

states that the seven phone calls that Trustee objected to were described with adequate specificity. Katten proffers that it reviewed Employment Retirement Income Security Act ("ERISA") rider to the officer and director policies to determine what insurance coverage would be available for violations of ERISA. Finally, Katter asserts that it researched Seventh Circuit law to determine how the Benefit Plans affected Debtors' fiduciary duties since the grandfathered Benefit Plans had otherwise been prohibited by statute in 1987.

## DISCUSSION

Typically, where a trustee, creditors' committee, or a debtor-in-possession seeks to employ a professional person, the Bankruptcy Code requires prior court authorization. 11 U.S.C. §§ 327(a), 1103(a), 1107(a); In re Gaslight Club, Inc., 782 F.2d 767, 774 (7th Cir. 1986); In re Met-L-Wood Corp., 103 B.R. 972, 975 (Bankr. N.D. Ill. 1989). Some courts have held that professional services rendered for a bankruptcy estate are compensable out of estate assets only if such professional services are authorized by the court prior to the services being rendered. In re Met-L-Wood Corp., 103 B.R. at 975 (citing In re Morton Shoe Companies, Inc., 22 B.R. 449 (Mass. 1982)). In particular, the In re Met-L-Wood Corp. court stated that "[t]he fact that such services may have been beneficial or valuable to the estate and performed in good faith is immaterial, as is any hardship to the unauthorized professional." Id. (citing In re Futuronics Corp., 655 F.2d 463, 469 (2d Cir. 1981)). The In re Met-L-Wood Corp. court set a strict rule "to 'maintain control of costs.'" Id. (quoting In re Garland, 8 B.R. 826, 828 (Mass.1981). The In re Met-L-Wood Corp. court further reasoned that to rule otherwise would undermine the "'necessary power of the court to ensure that assets of the estate are not wasted.'" Id. (quoting In re Fiberglass Specialty Co., Inc., 12 B.R. 119, 121 (Minn. 1981)).

Katten was never employed by Debtor's estate pursuant to an order of this Court. The

Court further finds that Debtor did not employ Katten as an "ordinary course professional" pursuant to the Court's August 14, 2007 order because Debtor did not fully comply with the conditions set forth in the Court's August 14, 2007 order. The August 14, 2007 order stated, in relevant part:

> 2. The Debtors are authorized and empowered to make monthly payments up to $15,000 . . . to each Ordinary Course Professional . . . , in the full amount billed by any such Ordinary Course Professional, upon receipt therefrom of reasonably detailed invoices indicating the nature of the services rendered and calculated in accordance with such Ordinary Course Professional's standard billing practices . . . ; provided, however, that no payment to the Ordinary Course Professional shall be made until such professional has been retained by the Debtors . . . .
>
> . . . .
>
> 6. Upon entry of this Order, the Debtors shall serve a copy of this Order upon the Ordinary Course Professional and thereafter, no later than fourteen (14) days prior to submitting an initial invoice for services rendered and disbursements incurred, the Ordinary Course Professional shall submit to the Debtors an affidavit (the "Ordinary Course Affidavit") similar to the form attached as **Annex 1** to this Order.
>
> 7. The Debtors' counsel will serve the Ordinary Course Affidavit upon the United States Trustee . . . , . . . the "Committee" . . . , counsel for the . . . lender, and counsel to Amcore Investments . . . (collectively, the "Interested Parties").
>
> . . . .
>
> 11. The Debtors are authorized, without need for further hearing or order from the Court, to employ and retain Ordinary Course Professionals not currently listed on the Ordinary Course Professional List (the "Additional Ordinary Course Professionals"), by filing with the Court an amendment to Exhibit A to the Motion (the "Amendment") listing the contact information of the Additional Ordinary Course Professional, along with a brief description of the services to be rendered and serving on the Interested Parties, the Amendment and the Ordinary Course Affidavit of the Additional Ordinary Course Professional and by otherwise complying with the terms of this Order. . . .
>
> . . . .
>
> 13. This Court should retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Katten was not listed on the original "Ordinary Course Professional List," but Katten did complete the Ordinary Course Affidavit of the Additional Ordinary Course Professional and submitted it to Debtor for filing with the Court. Debtor, however, failed to file with the Court:

(1) Katten's "Ordinary Course Affidavit;" or (2) an "Amendment" listing Katten's contact information and services to be rendered to the estate. Thus, pursuant to the express terms of the Court's August 14, 2007 order, Katten was never employed as an "Ordinary Course Professional."

On June 3, 2008, Katten filed an application seeking an administrative expense claim for $62,152.04 in post-petition, Chapter 11 legal services for Debtors. After Trustee's objection and a subsequent evidentiary hearing, in an order dated June 24, 2009, the Court granted Katten an allowed Chapter 11 administrative expense claim, pursuant to 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2), in an amount to be determined by further order of the Court.

Section 503(b) provides for administrative expenses, in relevant part, "(b) [a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including - - (1)(A) the actual, necessary costs and expenses of preserving the estate including-- (i) wages, salaries, and commissions for services rendered after the commencement of the case[.]" 11 U.S.C. § 503(b)(1)(A)(i). "[A] claim will be afforded priority under § 503 if the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.'" In re Jartran, Inc., 732 F.2d 584, 588 (7th Cir. 1984) (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)).

"[I]nducement of the creditor's performance by the debtor-in-possession is crucial to a claim for administrative priority." Id. "[A]dministrative priority is granted to post-petition expenses so that third parties will be moved to provide the goods and services necessary for a successful reorganization. Id. (citing In re Mammoth Mart, Inc., 536 F.2d at 954).

The burden of proving actual fees and costs incurred rests on the applicant. In re

Abernathy, 158 B.R. 749, 752 (Bankr. N.D. Ill. 1993) (citing In re Pettibone Corp., 74 B.R. 293 (Bankr. N.D. Ill. 1987)); In re Lindberg Prods. Inc., 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). Even if no objections are raised to a fee request, the Bankruptcy Court is still not bound to award the fee as prayed. Milliman v. First Bank of Highland Park, No. 93 C 5466, 1994 WL 174105, at *2 (N.D. Ill. May 5, 1994) (citing In re Pettibone Corp., 74 B.R. at 299-300). The Bankruptcy Court has the responsibility to determine the reasonableness of all fee requests, regardless of whether objections are filed. Id.; see also In re Minich, 386 B.R. 723, 727 (Bankr. C.D. Ill. 2008) (citing Cohen & Thiros, P.C. v. Keen Enters., Inc., 44 B.R. 570, 574 (N.D. Ind. 1984); In re Wildman, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987)).

A fee application must provide sufficient information for a court to understand what services were actually provided and to determine that the fees requested are reasonable and the services rendered were necessary and beneficial. In re Minich, 386 B.R. at 727. To provide that information, the applicant must set forth a detailed statement listing each service performed, the time expended for the performance, and the fee requested for the service. Fed. R. Bankr. P. 2016(a). Local Bankruptcy Rule 5082-1 identifies the requirements for the contents of an application for compensation made by a professional, under a Chapter 11 case. Bankr. N.D. Ill. R. 5082-1.

A narrative must be included to explain the necessity of the services. In re Minich, 386 B.R. at 727. "These detailed applications establish the 'actual,' while an accompanying narrative explanation of the 'how' and the 'why' establishes the 'necessary.'" Wildman, 72 B.R. at 707. The necessity of legal services for which fees are sought must be justified under a cost/benefit analysis, and the narrative included in the fee application should contain sufficient information to make that analysis. In re Minich, 386 B.R. at 727. A court reviewing a fee

application is not required to search through volumes of pleadings in a bankruptcy case and related adversary proceedings in an attempt to find justification for the legal services rendered and the fees requested. Id. at 727-28 (citing In re Taylor, 66 B.R. 390, 393 (Bankr. W.D. Pa. 1986) (A court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself.")).

Trustee objected to the allowance of certain fees by Katten because Katten sought fees for excessive phone calls, intra-office lawyer conferences, legal research, lumping and minimum time increments.

Trustee argues that Katten's invoices lack sufficient detail to determine the extensive time spent on thirteen (13) phone calls, totaling 12.8 billable hours or $6760 in fees, with several phone entries listed as two hours or longer.[1] An entry of "telephone call" or even "telephone call with Mrs. X" is insufficient. In re Pettibone Corp., 74 B.R. 293, 301 (Bankr. N.D. Ill. 1987) (citing In re R & B Institutional Sales, Inc., 65 B.R. 876, 881 (Bankr. W.D. Pa. 1986); In re Four Star Terminals, 42 B.R. 419, 426 (Bankr. D. Alaska 1984). The purpose and length of the conversations, and the person called or calling, must be clearly set out. Id. (citing In re NRG Resources, Inc., 64 B.R. 643, 653 (W.D. La. 1986); In re DiDiorio & Sons, Inc., 46 B.R. 648, 651 (Bankr. N.D. Ill. 1985)). Katten billed between $500 to $560 per hour for each phone call. Each entry listed the person called and the calling person. One 2.5 hour entry on August 20, 2007 listed the call recipients with a description "review plan materials, etc. regarding same." Some entries referred to "timing of valuation" and other more descriptive purposes. In light of

---

[1] A sample listing of the phone calls at issue follow: Brown, Gregory K. 8/17/07 – one phone call – 0.5 hours at $560 per hour; Brown, Gregory K. 8/20/07 – two phone calls – 2.5 hours at $560 per hour; Brown, Gregory K. 8/26/07 – two phone calls – 0.5 hours at $560 per hour; Howell, Gary W. 9/7/07 – two phone calls and one email to Brown – 2.5 hours at $500 per hour; Howell, Gary W. 9/10/07 – three phone calls – 2.5 hours at $500 per hour; Howell, Gary W. 9/11/07 – two phone calls and one email to Brown – 1.8 hours at $500 per hour; and Brown, Gregory K. 9/14/07 – one phone call – 1.0 hours at $560 per hour. This totals 12.8 hours and $6760 in fees.

these lengthy phone conferences as well as the minimalistic purpose descriptions, the Court finds that Katten's hours on these telephone conferences will be reduced from 12.8 billable hours to 6.4 billable hours and from $6760 in fees to $3380 in fees.

Trustee states that Katten improperly billed for more than one attorney for intra-office lawyer conferences on ten (10) separate occasions, including 36.2 hours billed and $16,432 in fees.[2] An entry of "conference" or "meeting," "conference with X" or "conversation with X" is insufficient. In re Pettibone Corp., 74 B.R. at 301. The entry should at the very least note the nature and purpose of the various meetings and conferences as well as the parties involved. Id. (citing In re NRG Resources, Inc., 64 B.R. 643 (W.D. La. 1986). Courts have also reduced compensation when there was excessive time charged for interoffice conferencing. See In re Mortakis, 405 B.R. 293, 299–300 (Bankr. N.D. Ill. 2009). Katten billed between $245 to $560 per hour for each intra-office lawyer conference. Some of the intra-office conferences were lumped with other activities. The Court finds that the intra-office conferences were excessively charged. Since the intra-office conferences were lumped with other activities, it is difficult to determine what the exact hours billed and fees charged for these entries. Therefore, the Court will lower the fees by 10%, which reduces the fees by $1643, for the intra-office lawyer conferences.

Trustee also asserts that Katten billed 13.1 hours or $3995.50 for a "survey of current Seventh Circuit" rather than research related to any specific issue benefiting the estate.[3] Entries

---

[2] A sample listing of the intra-office lawyer conferences at issue follow: 7/17/09 – 4 lawyers – 7.1 hours, $3629.50 in fees; 7/20/09 – 2 lawyers – 1.6 hours, $722 in fees; 7/23/09 – 2 lawyers – 4.6 hours, $1754 in fees; 7/25/09 – 3 laywers – 5.8 hours, $2796.50 in fees; 8/6/09 – 2.3 hours, $760 in fees; 8/10/09 – 2 lawyers – 1.5 hours, $780 in fees; 8/13/09 – 2 lawyers – 3.5 hours, $1780 in fees; 8/29/09 – 2 lawyers – 5.3 hours, $2086 in fees; 8/30/09 – 2 lawyers – 3.2 hours, $1414 in fees; 9/13/09 – 2 lawyers – 1.3 hours, $710 in fees. This totals 36.2 hours and $16,432 in fees, but some of the entries were lumped with other activities.

[3] A listing of the "survey of current Seventh Circuit" research at issue follow: 8/6/07 – 2 hours; 8/8/07 – 3.9 hours; 8/9/07 – 3.1 hours; 8/14/07 – 3.3 hours; and 8/15/07 – 0.8 hours. This totals 13.1 hours at $305 per hour which equals $3995.50.

of "research," "legal research" or "bankruptcy research" are insufficient. In re Pettibone Corp., 74 B.R. at 302 (citing In re Four Star Terminals, Inc., 42 B.R. 419, 435 (Bankr. D. Alaska 1984)). The nature and purpose of the legal research should be noted. Id. Moreover, the entry should indicate what matter the material sought will be used in. Id. Katten billed $305 per hour for research on "Seventh Circuit law on ESOP litigation." In the July 29, 2009 hearing, Katten indicated that it was necessary to research Seventh Circuit law on ESOP because Debtor's Benefit Plans were a rare structure for benefit plans and Katten needed to review how plans were allowed when the statute was valid before the 1980's. The Court finds that Katten has met its burden regarding these 13.1 hours or $3995.50 in fees on the research for "Seventh Circuit law on ESOP litigation."

Trustee proffers that, on seven (7) occasions, Katten invoiced for officer and director issues, rather than estate issues. In the July 29, 2009 hearing, Katten asserted that Debtor's Benefit Plans involved an ERISA policy that was a rider to the officer and director policies. Thus, regarding these entries, Katten billed for services on issues relating to the estate. Therefore, the Court finds that Katten has met its burden regarding these entries.

Trustee asserts that Katten block billed its invoices and billed in minimum 0.5 hour increments for attorney Brown. Applicants may not circumvent the minimum time requirement or any of the requirements of detail by "lumping" a bunch of activities into a single entry. Id. (citing In re Horn & Hardart Baking Co., 30 B.R. 938, 944 (Bankr. E.D. Pa. 1983)). Each type of service should be listed with the corresponding specific time allotment. Id. (citing In re NRG Resources, Inc., 64 B.R. 643, 654 (W.D. La. 1986)). Otherwise, the Court would be unable to determine whether or not the time spent on a specific task was reasonable. Id. (citing In re Affinito & Son, Inc., 63 B.R. 495, 498 (Bankr. W.D. Pa. 1986); In re Holthoff, 55 B.R. 36, 42

(Bankr. E.D. Ark. 1985)). Thus, services that have been lumped together should not be compensated. Id.; see also In re Mortakis, 405 B.R. 293, 299–300 (Bankr. N.D. Ill. 2009). As previously indicated, Katten lumped intra-office conferences with other activities, which made it difficult to determine what the exact hours billed and fees charged for these entries were.

Small amounts of time should not be uniformly reported as a minimum block of time. In re Pettibone Corp., 74 B.R. at 302 (citing In re Four Star Terminals, Inc., 42 B.R. 419, 426-27 n. 1 (Bankr. D. Alaska 1984)). For example, the reception of any communication should not be routinely recorded as taking a minimum of one-fifth (0.2) of an hour. Id. If a law firm charged hourly services in minimum time increments of 0.50 hours, courts in this district have routinely held such a practice to be inherently inflationary on the resulting bill. In re Kowalski, 402 B.R. 843, 847 (Bankr. N.D. Ill. 2009) (citing In re Stoecker, 114 B.R. 965, 976 (Bankr. N.D. Ill. 1990); In re Pettibone Corp., 74 B.R. at 302.

The Court notes that many of the entries for Katten attorney Gregory K. Brown were billed in multiples of 0.5 hours at a rate of $560 per hour. From July 25, 2007 through September 24, 2007, Katten attorney Brown billed 51.8 hours or $29,008 in fees. In light of the "lumping" and block billing, the Court will further reduce the fees by $1192.20, which when combined with the previous $5023 in reductions, will thereby reduce Katten's administrative expense claim by 10% from $62,152.04 to $55,936.84.

## CONCLUSION

For the foregoing reasons, the Court sustains Trustee's objection in part and grants Katten's administrative expense claim in part. Katten's Chapter 11 administrative expense claim will be reduced from $62,152.04 to $55,936.84.

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: August 24, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge